IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

CASE NO. 15-06132 (ESL)

ILDEFONSO MARTINEZ SANTIAGO

CHAPTER 11

Debtor

OPINION AND ORDER

This case came before the court on September 15, 2015 for an evidentiary hearing to consider the motion to dismiss or convert filed by LSREF2 Island Holdings, LTD ("Island Holdings"). The court set forth the uncontested facts as they appeared from the record and proffers by counsel for the Debtor and Island Holdings. The court deferred ruling on the motion to dismiss for a period of fourteen (14) days to allow the parties to reach an agreement on the repayment terms of Debtor's loan with Island Holdings. The court ordered the parties to file proposed findings of fact and conclusions of law if an agreement was not reached. On September 29, 2015 Island Holdings informed the court that it did not reach an agreement with the Debtor. The parties have submitted their respective motions including proposed findings of fact and conclusions of law. For the reasons set forth below, the court finds that the moving creditor, Island Holdings, established that there is cause for the conversion of the petition to chapter 7, and, thus, the court must grant the motion for conversion.

Jurisdiction

The court has jurisdiction over the instant contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b) (1) and 157(b) (2). See In re Ashley Oaks Dev. Corp., 458 B.R. 280, 282 (Bankr. D.S.C. 2011) (finding that the disposition of motions to convert or dismiss constitutes a core proceeding under 11 U.S.C. § 157(b) (2)).

Procedural Background

On August 11, 2015, the Debtor filed the instant Chapter 11 bankruptcy petition. The Debtor has continued operating his business and managing his affairs as a debtor in possession. The Debtor filed his monthly report of operations corresponding to the month of August 2015.

On August 17, 2015, the Debtor filed a "Motion for Entry of an Interim Order on an Expedited Basis (A) Authorizing the Use of Cash Collateral, (B) Granting Adequate Protection to Secured Creditor and (C) Scheduling a Final Hearing." On August 19, 2015, the Court authorized the interim use of cash collateral and scheduled a final hearing for October 13, 2015.

On August 20, 2015, Island Holdings filed a Motion to Convert to Chapter 7 or Dismiss (the "Motion to Dismiss or Convert") alleging that there is no reasonable likelihood of rehabilitation under Chapter 11 and, in consideration of the best interest of the creditors and the bankruptcy estate, the case should be converted to a Chapter 7 pursuant to Section 1112(b) (4) (A) of the Bankruptcy Code. On August 25, 2015, the Court entered an Order and Notice scheduling a hearing for September 15, 2015 and ordering the Debtor to file an opposition to Island Holding's Motion to Convert within 14 days, advising that if no such opposition is filed the court may dismiss or convert without further notice.

On August 26, 2015, Island Holdings filed a Motion to Prohibit Use of Cash Collateral and/or Reconsideration.

On September 8, 2015, the Debtor's former counsel filed an Urgent Motion for Leave to Withdrawal Legal Representation, Debtor's Counsel Motion for Urgent Disposition, and Motion Requesting Extension of Time to Prosecute Case. On September 10, 2015, this Court entered an Order: (a) granting the motion to withdraw as counsel filed by Debtor's former counsel; (b) denying the Debtor's motion for extension of time to prosecute case; and (c)

prohibiting the use of cash collateral. The Court also stated that it would "hold the hearing on the motion to dismiss or convert on the scheduled date, that is, September 15, 2015."

On September 14, 2015, the Debtor filed a Motion Objecting to the Conversion or Dismissal of the Case (the "Opposition") stating that: (a) the schedules and statement of financial affairs have to be amended; (b) the Debtor is a retired public school teacher; (c) if the case is converted or dismissed, the Debtor will lose everything for which they have worked for the past 20 years; (d) there is no cause for dismissal or conversion "for there is no basis for a substantial or continuing loss to or diminution of the estate after the filing of the case and Debtor can be reorganized under a Chapter 11 case"; and (e) "Debtor is entitled to a fresh start". Debtor's opposition states that the Debtor was not given due notice of the motions and orders in the case as there is an error in the addressed in the Court's records.[1] Debtor acknowledges that the schedules and statement of affairs need to be amended. The Debtor further asks for time to reach an agreement with Island Holdings.

On September 15, 2015, the Court held a hearing to consider Island Holding's Motion to Dismiss or Convert and the Debtor's Opposition thereto. After considering the arguments of the parties, the Court set forth the uncontested facts that appear from the record and proffers by counsel and took the matter under advisement. The Court deferred ruling on the Motion to Dismiss or Convert for a period of 14 days to allow parties to reach an agreement on repayment terms and, if the parties failed to reach a stipulation within such period, they were ordered to submit separate proposed findings of fact and conclusions of law on the pending motion. The facts which the court found at the hearing to be uncontested are: the Debtor has not made any

---

[1] Even though there appears to be an error in the uploading by Debtor's counsel in the Debtor's mailing address, the Debtor's counsel was given notice of all relevant documents. Omissions by a party's attorney, if they exist, are attributable to the client. Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co., 750 F.3d 1, 5 (1st Cir. 2014). In any event, the Debtor had actual notice of the motion to dismiss or convert and appeared and was represented at the actual hearing on the same. Thus, there is no due process violation.

payment to Island Holdings for over a year; the Debtor is not paying the real property taxes to the CRIM; the real property taxes owed as per the schedules are approximately $25,000; Island Holdings is an under-secured creditor as shown by the appraisals submitted by the Debtor as exhibits to the motion for use of cash collateral and the values disclosed in Schedule A; there is no equity in the properties given as collateral to Island Holdings, thus, unsecured creditors will not receive a dividend unless Island Holdings agrees to a carve-out; the rent was pledged as cash collateral to Island Holdings; as of the hearing date the Debtor is not authorized to use the cash collateral given as security to Island Holdings; the current rent of the properties, which total approximately $16,000 per month is a good return on the estimated value of the properties given as collateral to Island Holdings ($2,000,000); and there is one property that is free of liens. The court stated that balancing the above facts, if cause is found under § 1112(b) (4), the case should be converted to chapter 7 and not dismissed, as conversion is in the best interest of the estate.

Findings of Fact

In 1998, First Bank extended to Debtor and his then wife, Carmen Rivera Marrero, several commercial loans whereby the following real estate properties described in the Spanish language were mortgaged:

A. URBANA: Solar radicado en la Urbanización Sardinera Beach Inc., situada en los Barrios Pueblo e Higuillar, del término municipal de Dorado, Puerto Rico marcado con el número 106 del bloque E con un área de 1,050.00 metros cuadrados, en lindes por el Norte, en 85.00 metros con el solar número 105-E; por el Sur, en 35.00 metros con una servidumbre de 2.00 metros de ancho, que a su vez colinda con el solar 107-E; por el Este, en 80.00 metros con la Calle C de la Urbanización; por el Oeste, en 30.00 metros con el solar número 91- E. Contiene una casa. Enclava hoy una estructura comercial de dos plantas de construcción mixta (madera y cemento) dedicada a escuela. Lot number 1,206 registered at page 240 of volume 188 of Dorado, the P.R. Property Registry, Section Fourth of Bayamón.

This property is the one reported in Schedule A as no. (1). Encumbered through Deed of Mortgage No. 87 executed before Notary Public Michel Rachid Piñeiro on March 5, 1996.

B. URBANA: Solar radicado en la Urbanización Sardinera Beach Inc., situada en los Barrios Pueblo e Higuillar, del término municipal de Dorado, Puerto Rico marcado con el número 105 del bloque E con un área de 1,050.00 metros cuadrados, en lindes por el Norte, en 85.00 metros con el solar número 104·E; por el Sur, en 85.00 metros con el solar 106-E; por el Este, en 80.00 metros con la Calle B pero según el plano calle C o carretera estatal número 698; y por el Oeste, en 30.00 metros con el solar número 92·E. Enclava una casa. Este solar hoy se dedica a estacionamiento.
Lot number 1,204 registered on page no. 52 of volume 82 of Dorado, P.R. Property Registry, Section Fourth of Bayamón.

This property is the one reported in Schedule A as no. (2). Deed of Mortgage No. 88 executed before Notary Public Michel Rachid Piñeiro on March 5, 1996.

C. URBANA: Solar en la Urbanización Martorell sita en la municipalidad de Dorado, Puerto Rico, con un área de 2,782.43 metros cuadrados, en lindes por el Norte, en una distancia de 46.99 metros, con un solar de la Puerto Rico Telephone Company y en 25.00 metros, con el solar número A-6 de la misma Urbanización Martorell, por el Sur, en 42.83 metros, con un solar de The Shell Company of Puerto Rico y en 25.00 metros con el Solar número A-2 de la misma Urbanización Martorell; por su lado Este, en una distancia de 40.50 metros, con la Calle Luis Muñoz Rivera y por su lado Oeste, en una distancia de 39.67 metros con la Industrial Street que separa la Urbanización Martorell de la Dorado Industrial Development.

This property was formed by grouping Lots 1,603; 1,227; 1,132; 1,130, registered at 146 pages; 192; 167; and 154 volumes 42, 32, 30 of Dorado and 30, respectively, P.R. Property Registry, Section Fourth of Bayamón. Lot No. 1130 was reported in Schedule A as no. (3). Deed of Mortgage No. 7 executed before Notary Public Ernesto A. Meléndez Pérez on January 14, 2003.

D. URBANA: Solar radicado en la Urbanización Sardinera Beach Inc., situada en los Barrios Pueblo de Higuillar, del término municipal de Dorado, Puerto Rico marcado con el número 64- D. Tiene una cabida superficial de 1,964.97 metros cuadrados. Colinda por el Norte, en 35.28 metros con el solar número 82-D; por el Sur, en 39.08 metros con la Calle J de la propia Urbanización; por el Este, en 42.20 metros con la Calle C de la Urbanización; y por el Oeste, en 28.39 metros con el solar número 66-D y en 27.97 metros con el solar 65-D. Enclava una casa. Lot number 1,205 registered at page 56 of volume 32 of Dorado, the P.R. Property Registry, Section Fourth of Bayamón.

This property is the one reported in Schedule A as no. (4). Deed of Mortgage No. 126 executed before Notary Public Ernesto A. Meléndez Pérez on July 24, 2001.

The above described properties generate rent income. The Debtor and his ex-wife assigned such rent proceeds to First Bank. See the Mortgage Deeds; the Assignment acknowledged and subscribed on July 24, 2003 under affidavit no. 8,891 before Notary Public Ramón Moran Loubriel; Collateral Assignment of Lease Agreements and Rents acknowledged and subscribed on January 14, 2003 under affidavit no. 35,635 before Notary Public Ernesto A. Meléndez Pérez; and the Assignment acknowledged and subscribed on September 26, 2003 under affidavit no. 12,867 before Notary Public Teresa Jiménez Meléndez,. At the September 15, 2015 hearing, the Debtor acknowledged that the rent proceeds from these 4 properties were pledged to Island Holdings.

On October 5, 2011, after the Debtor and his then wife confronted financial difficulties in the payments of these four (4) mortgages and other debts, First Bank restructured the loans payments through the execution of three (3) separate Agreements of Compliance Plan Payment Plan, Ratification of guarantees and Confession of Judgment. First Bank subsequently transferred the loans to Island Holdings, who is currently the secured creditor.

In 2012, Vallejo & Vallejo, Real Estate Appraisers and Counselors, valued three (3) of the previous rent-producing properties. Vallejo & Vallejo stated in their appraisal report that during the past few years, the local real estate market has been negatively affected by several factors, including the on-going five and a half year local economic recession turned depression and the US economic and financial meltdown, the erosion of purchasing power and/or wealth of the consumers due to the collapse of the U.S. and international stock markets during the last quarter of 2008, and the credit crunch and/or lack of liquidity experienced in the banking sector, followed by the 2010 consolidation of the banking sector in the Island. This scenario, has created

a softer than usual real estate market, which is evidenced by slower absorption paces and higher vacancy rates, among others. As such, the subject property is currently affected by external economic obsolescence, which translates into loss of value.

There is no equity on these four (4) real estate properties. Therefore, Island Holdings is an under-secured creditor.

At the September 15, 2015 hearing the Debtor clarified that he receives $500 per month in rent from another unencumbered property over which Island Holdings does not have a security interest.

Due to the downturn in Puerto Rico's economy, the Debtor and his ex-wife Carmen Rivera Marrero defaulted on these payments as agreed with First Bank in 2011; and on April 2, 2014, Island Holdings filed a Complaint to Issue Judgment by Consent before Puerto Rico Court of First Instance. On August 28, 2014, the Puerto Rico Court of First Instance entered a Judgment by Consent, which was notified on September 11, 2014. The auction was scheduled for September 1, 2015 at 9:30 A.M.

On August 11, 2015, the Debtor Ildefonso Martinez Santiago filed the instant Chapter 11 bankruptcy petition. On August 15, 2015, the Debtor filed his Schedules. In Schedule A he disclosed his property interests in the four (4) commercial real estate properties mortgaged by First Bank, now Island Holdings, described above. In Schedule I, Part 2 (Monthly Income), the Debtor discloses as "net income from rental property" the rent proceeds he derives in an amount of $12,217.00. Debtor also reports a monthly social security income in the amount of $286, for a total monthly income of $12,503. In Schedule J, Part 2 (Monthly Expenses), the Debtor listed in his monthly expenses for "mortgages on other property" the mortgage for the real property he disclosed as no. (6), which is the mortgage monthly payment for the residential property where his ex-wife Carmen A. Rivera Marrero lives. The monthly mortgage payments for the

commercial properties he listed in his Schedule A nos. (1)- (4) was not included. However, the Debtor included as an expense under the subheading of "other" a monthly payment in the amount of $2,600 to his ex-wife Carmen Rivera Marrero without specifying if such payment corresponds to a domestic support order, liquidation of post-martial community property or professional services. He subsequently amended such monthly payment to his ex-wife to $1,600 and testified at his 341 meeting that such payment was not a DSO obligation but was rather paid because he felt he had a "moral obligation" to pay it.

The Debtor's unsecured creditors are Royal Holiday in an unsecured amount of $7,875 and Island Holdings in the unsecured portion of the collateral. The Debtor has not made mortgage payments on the aforementioned rent-producing properties to Island Holdings for over a year. This was acknowledged by the Debtor during the hearing held on September 15, 2015. Therefore, Island Holdings is, unquestionably, the largest secured and unsecured creditor of the estate.

Conclusions of Law

Section 1112(b) (1) of the Bankruptcy Code provides as follows:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b) (1) (Emphasis ours.)

The Court's discretion to dismiss or convert a Chapter 11 case is limited if cause is established. See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968, 2008 WL 4531982 (B.A.P. 1st Cir. 2008); and AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401 (Bankr. D. N.H. 2007) ("Prior to its amendment, the statute provided that a court 'may' dismiss the case upon finding cause, but amended section

1112(b) provides that a court 'shall' dismiss if cause is found, absent unusual circumstances."). The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the Chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04 [4] (16th Ed. 2011). "Thus, until the movant carries this burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. "Cause" is demonstrated through the preponderance of evidence standard. See Keven, A. McKenna, P.C. v. Official Comm. of Unsecured Creditors (In re Keven, A. McKenna, P.C.), 2011 U.S. Dist. LEXIS 57985 (D.R.I. 2011); In re El Legado, 2010 Bankr. LEXIS 1676, 2010 WL 1924439 (Bankr. D.P.R. 2010); In re Woodbrook Assoc's., 19 F.3d 312 (7th Cir. 1994); Colonial Daytona Ltd. Partnership v. American Sav. of Fla., 152 B.R. 996, 1001-1002 (M.D. Fla. 1993). Once "cause" is established, the burden shifts to the debtor to demonstrate "unusual circumstances" that establish that dismissal or conversion to Chapter 7 is not in the best interests of the creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.05[1] (16th Ed. 2011) and In re Dr. R. Samanta Roy Institute of Science Technology Inc., 2011 US App. Lexis 12148 at *8 (3rd Cir. 2011) (once cause is found, the burden shifts to the opposing party to show why dismissal or conversion would not be in the best interests of the estate and the creditors). The bankruptcy court retains broad discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate. Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968 (1st Cir. B.A.P. 2008). A determination of unusual circumstances is fact-intensive and contemplates facts that are not common to Chapter 11 cases. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.05 [1] (16th Ed. 2011). If the Chapter 11 case is devoid of

-9-

"unusual circumstances", then the bankruptcy court must apply the Section 1112(b) (2) analysis to determine whether the Chapter 11 case should be dismissed or converted to a Chapter 7. The objecting party must establish all of the factual elements stated in subparagraphs (A) and (B) of section 1112(b) (2). Id. In sum, a bankruptcy court may not convert or dismiss a case if: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the 'cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D. N.M. 2008) aff'd, 421 B.R. 602 (B.A.P. 10th Cir. 2009).

Section 1112(b) (4) (A) includes as "cause" "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b) (4) (A). Also see In re DCNC N.C. I, LLC, 407 B.R. 651, 664 (Bankr. E.D. Pa. 2009). This particular "cause" consists of two (2) requirements which must be satisfied. "First, it tests whether, after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively declining asset values. Second, it tests whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[6] [a] (16th ed. 2015). Rehabilitation has been defined as whether the debtor will be able to reestablish its business. In re Material Mgmt., Inc., 2014 Bankr. LEXIS 2342, at *15 (Bankr. D.P.R. 2014) (Lamoutte, B.J.). "[T]he standard under section 1112(b) (4) (A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for

reorganization. Rehabilitation means to reestablish a business. Whereas, confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[6] [a] [ii] (16th ed. 2015). "Instead, rehabilitation signifies something more, with it being described as 'to put back in good condition; re-establish on a firm, sound basis." In re Material Mgmt., Inc., 2014 Bankr. LEXIS 2342, at **15-16, citing In re Creekside Senior Apts., L.P., 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013); In re Westgate Props., Ltd., 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010). "Rehabilitation is the restoration of a business' vitality and depends on whether the debtor can formulate within a reasonable amount of time a reasonably detailed business plan." In re 221-06 Merrick Blvd. Assocs. LLC, 2010 Bankr. LEXIS 4431, at *5 (Bankr. E.D.N.Y. 2010). The purpose of Section 1112(b) (1) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." Loop Corp. v. United States Tr., 379 F. 3d 511, 516 (8th Cir. 2004), citing In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995). Also see In re Material Mgmt., Inc., 2014 Bankr. LEXIS 2342, at *16.

Once cause is established, the objecting party must properly establish unusual circumstances, as well as all factual elements required by Section 1112(b)(2)(A) and (B). See In re Costa Bonita Beach Resort, 513 B.R. at 195; In re Gilroy, 2008 WL 4531982, at *4. These elements are: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the 'cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." In re Costa Bonita Beach Resort, 513 B.R. at

195-196. If there are no unusual circumstances, the Bankruptcy Court must apply the analysis under 11 U.S.C. § 1112(b) (2) to determine if conversion or dismissal is appropriate. Id. at 195.

A determination of dismissal or conversion under Section 1112(b) (1) requires notice and a hearing. The "notice and hearing" requirement is defined as "after such notice is appropriate in the particular circumstances, and such opportunity for a hearing is appropriate in the particular circumstances". Id. at 196, citing 11 U.S.C. § 102(A). "However, a full evidentiary is not required, so long as the parties had a fair opportunity to offer relevant facts and arguments to the court and to confront their adversaries' submissions." In re De Jounghe, 334 B.R. 760, 766 (B.A.P. 1st Cir. 2005) (citations omitted). Also see In re Portela Torres, 2011 Bankr. LEXIS 4103 (Bankr. D.P.R. 2011) (Lamoutte, B.J.) (dismissing a Chapter 11 case without an evidentiary hearing because the parties had a fair opportunity to offer relevant facts and arguments to the court and to confront their adversaries' submissions in writing).

After cause to dismiss or convert to Chapter 7 has been established, the Court must determine whether dismissal or conversion is warranted, "whichever is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b) (1). The standard for choosing between conversion or dismissal based on "the best interest of creditors and the estate" implies the application of a balancing test by the Bankruptcy Court. See In re De Jounghe, 334 B.R. at 770; In re Staff Inv. Co., 146 B.R. 256, 260 (Bankr. E.D. Cal. 1992). The legislative history shows that Congress intended to invest the Bankruptcy Court with "wide discretion to make an appropriate disposition of the case" and "to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." In re De Jounghe, 334 B.R. at 770, citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 406, reprinted in 1978 U.S.C.C.A.N. 5963, 6361-62.

Discussion

The uncontested facts reveal that Island Holdings is an under-secured creditor and that the bankruptcy estate, which is for the most part comprised of real estate properties, has been decreasing in value since 2012, as evidenced by the appraisals submitted by the Debtor. The Debtor did not rebut such evidence or proffered any unusual circumstances. Although the real properties given as collateral to Island Holdings are rent-producing properties, the Debtor has not made any payments to Island Holdings for over a year, while receiving for his benefit the rent proceeds. Island Holdings is the largest secured and unsecured creditor in the instant case. There is nothing in the record of this case that suggests that the Debtor will be able to service the debt to Island Holdings, secured and/or unsecured, other than the value of the collateral and the rents themselves, which have been pledged to Island Holdings. His rental business, as it currently stands with the continuing diminution of the value of Island Holding's collateral, cannot be rehabilitated. Therefore, Island Holdings has established cause to either dismiss or convert to chapter 7 the instant case. Because the court finds that conversion is in the best interest of the estate, the case is hereby converted to chapter 7.

Conclusion

In view of the foregoing, the motion to convert is granted. The case is hereby converted to chapter 7.

SO ORDERED.

In San Juan, Puerto Rico, this 9th day of October, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge

-13-